**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Lora Alexander,

        Plaintiff,

v.

Teresa Jakowich, et al.,

        Defendants.

No. CV-26-04436-PHX-DWL

**ORDER**

On June 26, 2026, *pro se* Plaintiff initiated this action by filing, among other things, a complaint (Doc. 1) and an application to proceed *in forma pauperis* ("IFP application") (Doc. 2). The Court hereby grants the IFP application. The Court will screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)[1] before it is allowed to be served. Pursuant to that screening, the complaint is dismissed, albeit with limited leave to amend.

I.    Screening Under § 1915(e)(2)

    A.    **Legal Standard**

Under 28 U.S.C. § 1915(e)(2), a complaint is subject to dismissal if it contains claims that are "frivolous or malicious," that "fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." *Id.* Additionally, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to

---

[1]    Although section 1915 largely concerns prisoner litigation, section 1915(e) applies to all in forma pauperis proceedings. *Calhoun v. Stahl,* 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.").

relief." *Id.* Although Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Ninth Circuit has instructed that courts must "construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* litigant] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). Conclusory and vague allegations, however, will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). A liberal interpretation may not supply essential elements of the claim that were not initially pled. *Id.*

### B.    The Complaint

The relevant factual allegations in the complaint are as follows. Plaintiff is "an African American private citizen" who owns Lilie's of the Valley ("LOV"), a licensed home healthcare service agency. (Doc. 1 ¶ 9, 15.)

On an unspecified date, Plaintiff terminated an employee, Defendant Teresa Jakowich ("Jakowich"), for cause. (*Id.* ¶ 15.) Afterward, Jakowich "started her own competing home health company," which was in "direct defiance" of a non-compete agreement that Jakowich had previously signed. (*Id.* ¶ 16.) Jakowich also "formed a hostile alliance with her out-of-state siblings," Defendants Cynthia Erickson ("Erickson") and Greg Gerber ("Gerber"). (*Id.* ¶ 17.)

- 2 -

On an unspecified date, "Plaintiff entered into a residential lease agreement with [Jakowich's, Erickson's, and Gerber's] 90-year-old father," non-party Laverne Gerber ("Father"), who is "in full possession of his cognitive facilities." (*Id.* ¶¶ 18-19.) "The lease grants Plaintiff legal occupancy of the premises" at a property in Casa Grande, Arizona until October 3, 2026. (*Id.* ¶ 18.)

On an unspecified date, Jakowich, Erickson, and Gerber "launched a series of bad-faith reports to Adult Protective Services (APS), leveling false accusations of elder abuse, manipulation, and financial exploitation against Plaintiff." (*Id.* ¶ 20.) "The children blamed Plaintiff for their father's independent choices, operating under racially discriminatory tropes that a Black woman living in the residence must be manipulating their inheritance." (*Id.*)

On June 5, 2026, "the state administrative investigation concluded," and "[t]he official APS final report formally dismissed all accusations." (*Id.* ¶ 21.) Plaintiff and Father both "subsequently executed notarized affidavits confirming Plaintiff has zero access to, or interest in, [Father's] banking accounts or assets." (*Id.*)

On an unspecified date, Jakowich "contact[e]d major banking institutions, specifically PNC Bank, falsely accusing Plaintiff of bank fraud in an attempt to trigger institutional freezes on Plaintiff's accounts." (*Id.* ¶ 23.) Gerber made a similar false report to Fidelity Financial, "falsely claiming [Plaintiff] was attempting to steal his father's money." (*Id.* ¶ 24.) And Jakowich also "directly contacted state home health agency regulatory and licensing bodies, filing false, malicious complaints against [LOV] . . . ." (*Id.* ¶ 25.)

On June 9, 2026, Defendant Frank M. Fox ("Fox"), an attorney, and his law firm, Defendant FFox Law LLC ("FFox Law"), filed a civil lawsuit on behalf of Jakowich, Erickson, and Gerber against Plaintiff in Pinal County Superior Court. (*Id.* ¶ 26.) The lawsuit alleged that "Plaintiff had engaged in fraud,[] elder exploitation, and the deceptive theft of $13,000 from Mr. Gerber." (*Id.* ¶ 27.) "Fox and his clients willfully sought extraordinary equitable remedies . . . to bypass due process and force an illegal eviction of

a Black tenant." (*Id.*)

On an unspecified date, Jakowich "call[ed] the police under the false pretext that Plaintiff was violating a protection order, despite the fact that no such order existed." (*Id.* ¶ 29.) In response, Plaintiff installed "specialized security surveillance on her vehicle" and began "carrying a defensive firearm for personal protection." (*Id.* ¶ 31.) Plaintiff also "sought an emergency order of protection from the Superior Court of Arizona," but non-party Judge Lawrence Wharton denied relief on the ground that "he was afraid Plaintiff would do exactly what [Jakowich] had done to her (i.e., weaponize the order falsely)." (*Id.* ¶ 32-33.) In doing so, the court "permitted the white antagonist (Jakowich) to manipulate state systems without consequence while stripping the Black victim (Plaintiff) of immediate, vital legal protections against severe physical and psychological harm." (*Id.* ¶ 34.)

Based on these factual allegations, Plaintiff asserts four claims. Count One is a claim under 42 U.S.C. § 1981 against all Defendants for "racial discrimination in the making and enforcement of contracts." (*Id.* ¶¶ 35-39.) More specifically, Plaintiff alleges that Jakowich, Erickson, and Gerber "engaged in a targeted pattern of financial defamation and systematic harassment designed to impair, disrupt, and terminate Plaintiff's valid residential lease . . . and permanently destroy her healthcare firm"; that these Defendants' "actions were fueled by deep-seated racial animus, specifically targeting a Black woman with historical tropes of criminality, fraud, and financial deception"; and that Fox and FFox Law "knowingly weaponized their legal positions to give judicial effect to this discrimination." (*Id.*)

Count Two is a claim under 42 U.S.C. § 1985(3) against all Defendants for "Civil Rights Conspiracy to Deprive Equal Protection." (*Id.* ¶¶ 40-43.) Plaintiff alleges that "Defendants conspicuously conspired, cooperated, and acted in concern as an organized group to deprive Plaintiff, a Black woman, of the equal protection of the laws and her fundamental constitutional liberties to personal safety and property enjoyment." (*Id.*)

Count Three is a claim under 42 U.S.C. § 1983 against all Defendants for

- 4 -

"Deprivation of Equal Protection and Civil Rights Under Color of Law." (*Id.* ¶¶ 44-47.) This claim arises from non-party Judge Wharton's denial of Plaintiff's request for an emergency order of protection, which "effectively denied Plaintiff equal protection under the law based on her race." (*Id.*)

Count Four is a state-law claim for abuse of process and intentional infliction of emotional distress, based on the filing of the Pima County lawsuit, the reports to PNC Bank and Fidelity Financial, and the reports regarding LOV. (*Id.* ¶¶ 48-51.) The complaint acknowledges that the only jurisdictional basis for this claim is supplemental jurisdiction arising from the presence of the federal claims in Counts One through Three. (*Id.* ¶ 7.)

### C.   **Count One**

> The text of § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." The statute defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." A plaintiff asserting a § 1981 claim must initially identify an impaired contractual relationship under which the plaintiff has rights. A plaintiff must also show intentional discrimination on account of race. Moreover, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.

*Prieto Automotive, Inc. v. Volvo Car USA, LLC*, 2024 WL 3011170, *3-4 (E.D. Cal. 2024) (cleaned up).

"To state a claim under Section 1981, a plaintiff must identify an impaired 'contractual relation' by showing that intentional racial discrimination prevented the creation of a contractual relationship or impaired an existing contractual relationship." *Knight v. Wells Fargo Bank NA*, 459 F. Supp. 3d 1288, 1291 (N.D. Cal. 2019). Generously construed, the complaint identifies four relevant contracts or contractual relationships: (1) Plaintiff's residential lease with Father; (2) Plaintiff's consumer relationships (which are presumably memorialized in contracts) with various financial institutions; (3) LOV's contracts with unspecified third parties to provide home healthcare services; and (4) the non-compete agreement that Jakowich signed. Beginning with the first three contracts, although the complaint alleges that Jakowich, Erickson, and Gerber attempted, in various

ways, to interfere with Plaintiff's ability to perform those contracts, it fails to clearly allege whether those attempts were successful.  It is unclear, for example, whether Plaintiff was actually evicted, whether the financial institutions took any adverse action toward Plaintiff (such as freezing her accounts), and whether any of LOV's contracts to provide home healthcare services were terminated or otherwise impaired.  *See, e.g.*, *Astre v. McQuaid*, 804 F. App'x 665, 667 (9th Cir. 2020) ("Astre, however, failed to plausibly allege that McQuaid's actions impaired her contractual relationship with MAC.  The MAC Board of Directors repeatedly rebuffed McQuaid's demands . . . .").

In contrast, the complaint does clearly allege that Jakowich breached the non-compete agreement.  But putting aside the fact that it is unclear (1) whether the contractual counterparty under the non-compete agreement was Plaintiff or LOV (which bears on whether Plaintiff personally has rights under that contract) and (2) why any Defendant other than Jakowich could be held liable for interference with the performance of that particular contract, a broader problem that infects Count One in its entirety is that, in light of § 1981's "rigorous" "causation standard," "a complaint must contain sufficient factual matter to show that racial prejudice was a necessary condition of a contractual impairment." *Sharifi Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1045 (D. Ariz. 2021) (citation omitted).  The complaint is deficient in this regard.  Although Plaintiff speculates in various portions of the complaint that Defendants' actions toward her must have been motivated by racial bias and tropes, the complaint lacks any well-pleaded, non-conclusory factual allegations to support that inference.  "[M]ere knowledge of race or national origin coupled with conclusory allegations of a defendant's discriminatory animus is insufficient to survive a motion to dismiss." *Prieto Automotive*, 2024 WL 30111170 at *7.

Finally, although the analysis as to Count One could end there, the claim is further deficient as to Fox and FFox Law because their only challenged conduct was filing a lawsuit on behalf of their clients.  This conduct does not impair any contract between Plaintiff and anyone else.

…

### D.      Count Three

Turning to Count Three, "[t]o state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).  The complaint fails to allege that any Defendant is a state actor or otherwise acted under color of state law, so Count Three does not state a claim.

### E.      Count Two

As for Count Two, "§ 1985(3) reaches purely private conspiracies." *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 832 (1983).  *See also Griffin v. Breckenridge*, 403 U.S. 88, 96 (1971) ("We turn, then, to an examination of the meaning of § 1985(3).  On their face, the words of the statute fully encompass the conduct of private persons.  The provision speaks simply of 'two or more persons in any State or Territory' who 'conspire or go in disguise on the highway or on the premises of another.'  Going in disguise, in particular, is in this context an activity so little associated with official action and so commonly connected with private marauders that this clause could almost never be applicable under the artificially restrictive construction of [applying solely to state actors].  And since the 'going in disguise' aspect must include private action, it is hard to see how the conspiracy aspect, joined by a disjunctive, could be read to require the involvement of state officers."); *id.* at 99 ("An element of the cause of action established by the first section, now 42 U.S.C. § 1983, is that the deprivation complained of must have been inflicted under color of state law.  To read any such requirement into § 1985(3) would thus deprive that section of all independent effect.").  Although the complaint must allege state involvement "when the alleged conspiracy is aimed at a right that is by definition a right only against state interference," state involvement is not required when the § 1985(3) claim involves "private conspiracies aimed at interfering with rights constitutionally protected against private, as well as official, encroachment." *Scott*, 463 U.S. at 833.

"[I]n order to prove a private conspiracy in violation of the first clause of § 1985(3),

a plaintiff must show, *inter alia,* (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993) (cleaned up).  Plaintiff alleges that the "explicit purpose" of the conspiracy was "to strip Plaintiff of her property rights" and "drive her from her home," as well as to "destroy her commercial standing." (Doc. 1 ¶ 43.)  But as noted above, Plaintiff has alleged no nonconclusory facts establishing that racial animus lay behind the challenged actions, so Count Two fails to state a claim.  *See, e.g.*, *Rote v. Comm. on Jud. Conduct & Disability of Jud. Conf. of United States*, 577 F. Supp. 3d 1106, 1141 (D. Or. 2021) ("A plaintiff may sue under § 1985 for the conspiracies committed by private actors.  Thus, Plaintiff's claim under § 1985 against Walker does not fail for lack of state action.  Rather, Plaintiff's claim under § 1985 against fails because Plaintiff has not alleged sufficient facts plausibly showing that Walker engaged in a conspiracy to discriminate against Plaintiff based on any protected class.").

### F.    **Count Four**

Given these determinations, it is unnecessary to address the sufficiency of Plaintiff's state-law claim in Count Four.  Because the complaint fails to state a valid federal claim, the Court declines to exercise supplemental jurisdiction over Count Four.

### G.    **Limited Leave To Amend**

For these reasons, the complaint is subject to dismissal.  As for whether the dismissal should be with or without leave to amend, the rule in the Ninth Circuit is that "[a] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (cleaned up).  Furthermore, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

Here, it is absolutely clear that the deficiencies in the complaint could not be cured as to Count Three. Furthermore, it is absolutely clear that the deficiencies could not be cured with respect to Fox and FFox Law as to Counts One and Two. In contrast, because it may be possible for Plaintiff to cure the deficiencies in Counts One and Two as to Jakowich, Erickson, and Gerber (in which case Plaintiff could reassert Count Four as to all defendants), the Court will grant limited leave to amend as to those claims.

The amended complaint must adhere to all portions of Rule 7.1 of the Local Rules of Civil Procedure ("LRCiv"). Additionally, the amended complaint must satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Specifically, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1); *see also* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."). Where a complaint contains the factual elements of a cause, but those elements are scattered throughout the complaint without any meaningful organization, the complaint does not set forth a "short and plain statement of the claim" for purposes of Rule 8. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988).

If the amended complaint fails to comply with the Court's instructions as provided in this Order, the action may be dismissed pursuant to 28 U.S.C. § 1915(e) and/or Rule 41(b) of the Federal Rules of Civil Procedure. *McHenry*, 84 F.3d at 1177 (affirming dismissal with prejudice of amended complaint that did not comply with Rule 8(a)). Given this specific guidance on pleading requirements, the Court is not inclined to grant leave to file another amended complaint if the first amended complaint is found to be deficient. *Ferdik*, 963 F.2d at 1261 (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

Plaintiff is directed to become familiar with the Local Rules and the Federal Rules

of Civil Procedure and is reminded that the Federal Court Self-Service Clinic provides free civil legal help to self-represented litigants.  (*See* Notice to Self-Represented Litigant, Doc. 7.)

In light of these determinations, Defendants' motions to dismiss (Docs. 9 and 10), which appear to be identical, are denied as moot.  Defendants are advised that there is no need to take any action in this matter unless and until (1) Plaintiff files an amended complaint, (2) the Court determines that the amended complaint is sufficient to survive screening, and (3) the amended complaint is thereafter served.

II.    Motion To Disqualify Defense Counsel

Plaintiff moved to disqualify defense counsel, asserting that defense counsel, who is also a defendant in this action, "flagrantly breached" his "duty of candor to his clients and this Court" by failing "to inform is co-defendants . . . that they are legally required to retain independent, separate legal counsel.  (Doc. 12 at 2.)[2]  Plaintiff asserts that defense counsel has "incurable conflicts" due to the ethical rules regarding conflicts of interest and the advocate-witness rule.  (*Id.*)

In the Ninth Circuit, the "general rule" is that "courts do not disqualify an attorney on the grounds of conflict of interest unless [a former or current client] moves for disqualification."  *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1988).  *See also Blacktail Mountain Ranch Co., LLC v. Jonas*, 611 F. App'x 430 (9th Cir. 2015) ("Plaintiffs lacked standing to move for disqualification because they were not clients or former clients of Defendants' counsel"); *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1077 (9th Cir. 2011) (district court's finding that plaintiff "lacked standing to seek disqualification for defense counsel's alleged breach of duties to *his* client" was "well grounded and legally correct").  Likewise, under Arizona law, "[g]enerally, only a client or a former client has standing to challenge legal representation on grounds of conflict of interest."  *State ex rel. Romley v. Superior Court*, 891 P.2d 246, 248 (Ariz. Ct. App. 1995).  There are "exception[s] to the general rule," but they arise "only in extreme circumstances."  *Id.*

---

[2]    The motion at Doc. 11 appears to be identical to the motion at Doc. 12.

(cleaned up).

The Ninth Circuit and Arizona courts have both cited, with approval, the Fifth Circuit's decision in *In re Yarn Processing Pat. Validity Litig.*, 530 F.2d 83 (5th Cir. 1976). *Kasza*, 133 F.3d at 1171; *Romley*, 891 P.2d at 248. There, the Fifth Circuit emphasized that consent of the present and former clients "will prevent the disqualification of the attorney" on conflict-of-interest grounds. *Yarn Processing*, 530 F.2d at 89. The Ninth Circuit has cited *Yarn Processing* in support of the proposition that a client "may expressly or impliedly waive his objection and consent to the adverse representation," adding that "[i]t is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *Tr. Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). This is consistent with the notion that a conflict of interest is an ethical violation only to the extent it impairs the interests of the clients.

For these reasons, and because this case does not present an extreme circumstance, Plaintiff lacks standing to move for disqualification of defense counsel on conflict-of-interest grounds. *Accord CWT Canada II Ltd. P'ship v. Bridges*, 2017 WL 3534977, *3 (D. Ariz. 2017) ("Assuming without deciding that [there is] a conflict of interest under Ethical Rule 1.7, Plaintiffs do not have standing to bring a motion to disqualify WB on this basis."); *Xcentric Ventures, LLC v. Stanley*, 2007 WL 2177323, *2 (D. Ariz. 2007) ("Defendants . . . lack standing to move for the disqualification of Plaintiffs' counsel on the ground of conflict of interest."); *Wakefield v. Advanced Med. Servs. Corp.*, 2010 WL 11628521, *5 (D. Ariz. 2010) ("The Court also concludes that Defendants do not have standing to move for disqualification of Mr. Britt based upon an alleged conflict of interest.").

Yet even if Plaintiff had standing, Plaintiff's arguments regarding ER 1.7 would fail on the merits. *Cf. Kasza*, 133 F.3d at 1171 ("Regardless, even assuming that Frost does have standing, we see no basis for disqualification."). It appears clear that all of the

Defendants' interests are aligned, such that there is no conflict.

As for ER 3.7, this rule provides that a lawyer "shall not act as advocate *at a trial* in which the lawyer is likely to be a necessary witness" unless certain circumstances apply. (emphasis added). Because trial is, at this point, a distant possibility, any concerns regarding the "lawyer as witness" rule are premature.

Thus, Plaintiff's motions for disqualification (Docs. 11, 12) are denied.

Finally, Plaintiff has recently filed three motions, all inaccurately docketed as successive motions to allow electronic filing—which was already granted (Doc. 8)—each of which renews requests for some kind of penalty against defense counsel. (Docs. 15, 16, 17.) These redundant requests have a tenor of harassment. Plaintiff is cautioned that (1) she must ensure that her motions are docketed properly and (2) she must abstain from filing successive motions seeking the same relief. Failure to abide by this admonishment may result in sanctions, including "immediate discontinuation" of the electronic filing privilege "and disabling of the password" assigned to Plaintiff for use of the electronic filing system. (Doc. 8.)

Accordingly,

**IT IS ORDERED** that:

1. The application for leave to proceed in forma pauperis (Doc. 2) is **granted**.

2. The complaint (Doc. 1) is **dismissed** with limited leave to file an amended complaint, as discussed above, by **August 18, 2026**.

3. If Plaintiff fails to file an amended complaint by **August 18, 2026**, the Clerk of Court shall terminate the action.

4. Defendants' motions to dismiss (Docs. 9, 10) are **denied as moot**.

5. Plaintiff's motions to disqualify counsel (Docs. 11, 12) are **denied**.

…

…

…

…

6.      Plaintiff's successive motions for penalties against defense counsel (Docs. 15, 16, 17) are **denied**.  Plaintiff is cautioned that (1) she must ensure that her motions are docketed properly and (2) she must abstain from filing successive motions seeking the same relief.

Dated this 4th day of August, 2026.

_____
Dominic W. Lanza
United States District Judge

- 13 -